# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

SOLARRESERVE CSP HOLDINGS, )
LLC, a Delaware limited liability )
company, )
                      )
           Plaintiff, )
                      )
          v. )     **C.A. No. 2020-0064-JRS**
                      )
TONOPAH SOLAR ENERGY, LLC, a )
Delaware limited liability company, )
                      )
          Defendant. )

## MEMORANDUM OPINION

Date Submitted:  May 15, 2020
Date Decided:  July 24, 2020

Francis G.X. Pileggi, Esquire of Lewis Brisbois Bisgaard & Smith LLP, Wilmington, Delaware; Michael G. Platner, Esquire and Vincent F. Alexander, Esquire of Lewis Brisbois Bisgaard & Smith LLP, Ft. Lauderdale, Florida; and John S. Poulos, Esquire and Andrew Bluth, Esquire of Lewis Brisbois Bisgaard & Smith LLP, Sacramento, California, Attorneys for Plaintiff.

Andrew D. Cordo, Esquire, Shannon E. German, Esquire, Daniyal M. Iqbal, Esquire and Nora M. Crawford, Esquire of Wilson Sonsini Goodrich & Rosati, P.C., Wilmington, Delaware and Matthew A. Feldman, Esquire, Todd G. Cosenza, Esquire and Charles D. Cording, Esquire of Willkie Farr & Gallagher LLP, New York, New York, Attorneys for Defendant.

**SLIGHTS, Vice Chancellor**

Plaintiff, SolarReserve CSP Holdings, LLC ("SolarReserve"), seeks to compel Defendant, Tonopah Solar Energy, LLC (the "Company"), to produce certain books and records in compliance with its alleged obligations to allow inspection as set forth in the Company's Third Amended and Restated Limited Liability Company Agreement (the "LLC Agreement").[1] The problem with SolarReserve's demand, according to the Company, is that SolarReserve no longer possesses the right it seeks to vindicate in this action, as it is no longer associated with the Company to a degree that would allow it to demand inspection.[2] SolarReserve disagrees and has brought a breach of contract claim against the Company to enforce its supposed contractual rights. The case was tried to the Court on a paper record.

This Court is familiar with these parties from previous litigation. After the Company's solar energy project in Nevada unraveled, SolarReserve petitioned this Court to order an equitable dissolution of the Company under the LLC Agreement, notwithstanding that it maintained, at best, a distant relationship with the Company at the time it sought to end the Company's existence (the "Dissolution Action").[3]

---

[1] *See* Joint Pre-Trial Stipulation and Order ("PTO") (D.I. 28) ¶ 18.

[2] PTO § III, ¶ B(1).

[3] *See SolarReserve CSP Hldgs., LLC v. Tonopah Solar Energy, LLC*, 2020 WL 1291638, at *1 (Del. Ch. Mar. 18, 2020); PTO ¶¶ 19–25.

1

The Court dismissed that action under Court of Chancery Rule 12(b)(6), upon concluding that SolarReserve "cannot rely on equity to recoup rights [including the right to seek dissolution] that it knowingly bargained away."[4] SolarReserve is back, this time seeking to exercise putative contractual inspection rights, again invoking the LLC Agreement.

As it turns out, this Action is "*déjà vu* all over again."[5] Before it filed the Verified Complaint for Books and Records (the "Complaint"), SolarReserve assigned all claims it has against the Company to an unaffiliated third party.[6] Under that agreement, any recovery or remedy granted in this action would go to the assignee, not SolarReserve. Because SolarReserve is not the real party in interest, it cannot maintain this Action under Court of Chancery Rule 17(a). Moreover, because the assignee to whom SolarReserve assigned its claims has no information rights under the LLC Agreement, it also has no right to the information SolarReserve seeks. In other words, SolarReserve once again has sought to exercise rights it knowingly bargained away, and cannot prove that it is entitled to relief.

---

[4] *SolarReserve*, 2020 WL 1291638, at *7.

[5] *Yogisms*, YOGI BERRA MUSEUM & LEARNING CENTER (last visited July 23, 2020), https://yogiberramuseum.org/about-yogi/yogisms/.

[6] Compl. ¶ 1 (dated February 6, 2020); JX 6 (the "Assignment") (dated December 31, 2019 by and between "SolarReserve CSP Holdings, LLC" and CMB).

2

## I. BACKGROUND

The Court held a one-day trial on a paper record during which it received 24 trial exhibits.[7] I have drawn the facts from the stipulations entered before trial, lodged testimony in the form of deposition transcripts and exhibits presented during trial.[8] The following facts were proven by a preponderance of the evidence.

### A. The Parties and Relevant Non-Parties

The Company is a Delaware limited liability company formed to operate a solar power plant project in Nevada (the "Project").[9] SolarReserve is currently a holding company established to hold an indirect interest in the Company.[10] On this record, SolarReserve's precise ownership structure is not entirely clear.[11] What is clear is that non-party, SolarReserve, Inc., ("SolarReserve Parent"), was an entity headquartered in Santa Monica, California that sat atop a "complex" of entities

---

[7] PTO § V; Joint Trial Ex. List ("JX List") (D.I. 27).

[8] I cite to docket entries by docket number ("D.I. __"), the trial transcript (D.I. 49) (by "Tr. __"), stipulated facts set forth in the PTO (by "PTO __"), trial exhibits (by "JX" number), and the deposition transcripts of Justin Pugh and Troy Taylor (by "____ Dep.") (D.I. 30, 32). *See* JX List; PTO; D.I. 32 (Notice of Lodging).

[9] PTO ¶¶ 4–6; JX 2 (the "LLC Agreement") (recitals).

[10] Taylor Dep. at 33:12–21; Pugh Dep. at 223:20–224:5; PTO ¶ 15 ("Currently, Plaintiff holds an indirect interest in the Company through several intermediary entities.").

[11] *See* Pugh Dep. at 208, 220–24.

(including SolarReserve) engaged in developing solar power plants.[12]  As will be explained below, SolarReserve Parent is no longer in business, and its indirect ownership interest in SolarReserve has been assigned to an unaffiliated third party not before the Court.[13]

An affiliate of SolarReserve formed the Company to develop, own and operate the Project.[14]  At first, SolarReserve was the Company's sole owner, and SolarReserve Parent's CEO (non-party, Kevin Smith) and CFO (non-party, Steven Mullinnex) were the Company's two original managers.[15]  But, in the process of raising capital to finance the Project, SolarReserve ceded its sole-member status to others through various transactions and agreements that, as of today, leave it as only an indirect investor in the Company.[16]  More precisely, SolarReserve has a 50% interest in non-party, Tonopah Solar Investments, LLC, which owns an interest in non-party, Tonopah Solar Energy Holdings, I, LLC, which, in turn, owns an interest

---

[12] *Id.* at 220:2–19, 223:9–19.

[13] Taylor Dep. at 109, 114, 116.

[14] PTO ¶¶ 6–7.

[15] *Id.* ¶ 7; Pugh Dep. at 229:3–11.

[16] PTO ¶ 15.

in non-party, Tonopah Solar Energy Holdings II, LLC.[17] Tonopah Solar Energy II, LLC is now the sole member of the Company.[18]

Non-party, Troy Taylor, is SolarReserve's acting CEO.[19] Taylor holds other corporate titles at SolarReserve, but he does not "remember what they are."[20] Non-party, CMB Infrastructure Investment Group IX, L.P. ("CMB"), was a lender to SolarReserve. CMB is not in the solar power business and is unaffiliated with SolarReserve Parent.[21]

## B. The LLC Agreement

As noted, at first, SolarReserve was the sole owner of the Company, but as the Project moved forward, and expenses mounted, SolarReserve determined that it needed to seek out other funding sources to help cover expenses.[22] Although SolarReserve was able to find investors to finance the Project, in exchange for their

---

[17] *Id.* ¶ 16.

[18] *Id.* ¶ 17.

[19] Taylor Dep. at 9:22, 21:6–16.

[20] *Id.* at 36.

[21] *Id.* at 22–23, 31, 231.

[22] PTO ¶¶ 7–8.

investments, SolarReserve was forced to give up its direct ownership interest in the Company.[23]

In connection with SolarReserve's withdrawal as the sole member of the Company, the Company and its stakeholders agreed to insert certain provisions into the LLC Agreement that would provide a mechanism for SolarReserve to request access to the Company's books and records as a "Sponsor Entity."[24] To that end, Section 7.2 of the LLC Agreement states, in relevant part:

> The Company shall keep books and records . . . [and] shall provide to each of the Sponsor Entities access to the books and records or any other information held by the Company reasonably requested by such Sponsor Entity, including the records of all transactions of the Company.[25]

Relatedly, the LLC Agreement defines "Sponsor Entity" as "any of Santander Sponsor, Cobra Sponsor, or SolarReserve Sponsor."[26] In turn, "SolarReserve Sponsor" is defined as "SolarReserve CSP Holdings, LLC excluding any unaffiliated successor."[27] The LLC Agreement defines one of the other Sponsor

---

[23] *Id.* ¶¶ 11–18.

[24] *Id.* ¶¶ 16–18; LLC Agreement §§ 7.2–7.3.

[25] LLC Agreement § 7.2.

[26] LLC Agreement § 1.1 (definition of "Sponsor Entity").

[27] LLC Agreement § 1.1 (definition of "SolarReserve Sponsor").

Entities, "Santander Sponsor," differently to include the identified entity *as well as* that entity's "assignees, transferees and successors."[28]

**C. SolarReserve Parent's Creditors Assume Control**

Given the historical relationship between the Company and SolarReserve Parent, the Company maintained "all [its] documents," including financial records, on a server located at SolarReserve Parent's headquarters, which was under SolarReserve Parent's sole control (the "Server").[29] Access to that server would provide access to at least 97% of the Company's records—constituting multiple terabytes of Company data.[30]

This arrangement came to an abrupt end in 2019 when SolarReserve Parent experienced financial difficulties, furloughed all its employees and hired a Chief Restructuring Officer to effectuate a wind-down of its business through liquidation.[31] Most of SolarReserve Parent's assets were sold and those that remained were assigned to a trustee for the benefit of SolarReserve Parent's creditors

---

[28] LLC Agreement § 1.1 (definition of "Santander Sponsor").

[29] Pugh Dep. at 233:11–22, 232:6–21.

[30] *Id.* at 231–32, 236:16–19, 241:7–242:6.

[31] *Id.* at 224–25.

pursuant to a General Assignment.[32] In conjunction with this agreement, all of SolarReserve Parent's corporate officers resigned.[33]

As the liquidation process ran its course, SolarReserve Parent advised the Company that the Company's access to the Server would soon be cut off.[34] By late 2019, the Company was scrambling to copy as much of its documents and data as it could, eventually leaving behind data that it deemed not "absolutely necessary to run the [P]roject."[35]

SolarReserve Parent's liquidation caused two critical changes that are relevant here.[36] *First*, on December 31, 2019, SolarReserve (among others) assigned all of its "right title and interest in and to all actions, claims, choses in action, and lawsuits of any nature whatsoever . . . against" the Company to CMB (the "Assignment of Claims").[37] Under the Assignment of Claims, CMB (rather than SolarReserve) has the right to prosecute SolarReserve's claims against the Company, and CMB alone

---

[32] *Id.* at 225; Taylor Dep. at 28, 109 (describing the General Assignment).

[33] Taylor Dep. at 71.

[34] Pugh Dep. at 234–38.

[35] *Id.* at 234–36.

[36] *Id.* at 220 (describing the SolarReserve Parent's "complex").

[37] *See* Assignment.

is entitled to the proceeds of such claims (whether proceeds take the form of cash, other property or other forms of relief).[38]

*Second*, in the spring of 2019, as part of SolarReserve Parent's liquidation, Troy Taylor was hired by SolarReserve's counsel in this action (Lewis Brisbouis Bisgaard & Smith LLP) to help CMB "maximize [its] recovery."[39] CMB compensates Taylor for his services as SolarReserve's CEO, and his job description makes clear that he is not expected to "assist an affiliate of SolarReserve [Parent] with its economic recovery."[40] Once Taylor took the reins to help CMB maximize its recovery, there was "no one else" left at SolarReserve.[41]

### D. Procedural Posture

On October 2, 2019, SolarReserve filed its original complaint in the Dissolution Action.[42] The Court dismissed that action on March 18, 2020, for failure

---

[38] Assignment § 4.

[39] Taylor Dep. at 21–23.

[40] *Id.* at 26, 37.

[41] *Id.* at 47.

[42] PTO ¶ 19.

to state a viable claim under Court of Chancery Rule 12(b)(6).[43]  SolarReserve has appealed this ruling to our Supreme Court, and the appeal is pending.[44]

In the midst of this prior litigation, on December 31, 2019, SolarReserve executed the Assignment of Claims in favor of CMB.[45]  Soon after, on January 28, 2020, SolarReserve made a written demand on the Company to inspect books and records under the LLC Agreement (the "Demand").[46]  In the Demand, SolarReserve sought an array of documents, including "all communications" between the Company and multiple entities engaged in the Project.[47]  The Company rejected the Demand.[48]  In response, SolarReserve filed its Complaint on February 5, 2020.[49]  The Complaint contains a single count for breach of contract.[50]

---

[43] *Id.* ¶¶ 23–24.

[44] *Id.* ¶ 25.

[45] Assignment (recitals).

[46] PTO ¶ 35; JX 10 (the Demand).

[47] JX 10 at 2 (seeking "All communications" between (i) the Company and (ii) the U.S. Department of Energy as well as (iii) the main contractor engaged to build the Project that are "related to" the Project—as well as "[a]ll communications related to the status of the [Project]").

[48] PTO ¶ 37.

[49] *Id.* ¶ 38.

[50] *See* Compl. ¶ 11.  On May 8, 2020, SolarReserve filed a Motion *In Limine* to exclude Joint Trial Exhibits 1, 5, 13 and 24.  *See* Mot. *In Limine* to Exclude Joint Tr. Exs. 1; 5; 13

## II.  ANALYSIS

To protect "the defendant from duplicative and unnecessary litigation," our law allows only a "real party in interest" to prosecute a claim.[51]  Because the real party in interest inquiry implicates the threshold question of whether SolarReserve is properly before the Court, it is appropriate to address this issue first.[52]

As discussed below, SolarReserve has assigned all claims it has against the Company to CMB and is, therefore, no longer the real party in interest.  Moreover, given that the real party in interest, CMB, possesses no information rights under the LLC Agreement, it cannot continue to prosecute this Action in SolarReserve's stead.[53]  Accordingly, judgment must be entered for the Company.

---

and 24 ("Mot. *In Limine*") (D.I. 37).  The Motion is denied as moot since I have not relied upon any of the challenged exhibits in this Opinion.

[51] *Northpointe Hldgs. LLC v. Nationwide Emerging Managers, LLC*, 2012 WL 2005453, at *6 (Del. Super. Ct. May 24, 2012) (citing *Cammille v. Sanderson*, 101 A.2d 316, 319 (Del. Super. Ct. 1953)).  *See also* Ct. Ch. R. 17(a) ("Every action shall be prosecuted in the name of the real party in interest.").

[52] *Id.  See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stauffer Chem. Co.*, 1991 WL 138431, at *6 (Del. Super. Ct. July 15, 2001) (discussing an assignment of an interest that was the subject of litigation and stating that Rule 17(a) involves an analysis of whether the plaintiff is "a real party in interest or otherwise a proper party" to the action).

[53] *See Pritchett v. I/O Repair, Inc.*, 2013 WL 1750888, at *3 (Del. Com. Pl. Apr. 22, 2013) (To prevail on a breach of contract claim "plaintiff must prove that the defendant breached an obligation *owed to plaintiff* by way of contract.") (emphasis supplied).

11

## A. SolarReserve Is Not the Real Party in Interest

Under Court of Chancery Rule 17(a), where, as here, "there has been a complete assignment, the . . . plaintiff should be the assignee."[54] Indeed, it is hornbook law that "the assignee is the owner of any claim arising from the chose and should be treated as the real party in interest."[55] "Stated another way, a real party in interest is the person who is entitled to the fruits of the action."[56] It is clear on this record that CMB is the *sole* party in interest in the wake of the absolute assignment of SolarReserve's interest in this lawsuit to CMB.[57]

SolarReserve transferred to CMB all its "right, title, and interest in and to all actions" against the Company.[58] The transfer included all "claims" and "lawsuits of any nature whatsoever," as well as "all rights and benefits of" SolarReserve "relating

---

[54] *Nat'l Union*, 1991 WL 138431, at *8.

[55] 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1545 (3d ed. 2020); *see also* 59 AM. JUR. 2D PARTIES § 40 (2d ed. 2020) ("The assignor of a chose in action is not a real party in interest and has no standing to prosecute an action on the chose in action.").

[56] 59 AM. JUR. 2D PARTIES § 38 (2d ed. 2020).

[57] Assignment at 1 (assigning all of SolarReserve's "right, title, and interest in and to all actions, claims, choses in action, and lawsuits . . . against . . . Tonopah Solar Energy, LLC").

[58] *Id.*

12

to" such claims.[59] SolarReserve agreed that any potential distribution on account of the assigned rights "shall constitute property of" CMB, "whether in the form of cash . . . or any other property."[60] As such, SolarReserve would not be the beneficiary of any relief that might be achieved in this action.[61]

While not entirely clear, it seems SolarReserve believes it can avoid this black letter law by relying upon provisions within the Assignment of Claims where SolarReserve authorized CMB to act in the name of SolarReserve as its "attorney-in-fact."[62] I gather SolarReserve's argument is that "CMB possesses the right to enforce *SolarReserve's rights* in a lawsuit" and, by virtue of the power of attorney, CMB is causing SolarReserve to exercise SolarReserve's rights under the LLC Agreement.[63]

This is wrong. First, the premise of the real party in interest rule is that, as an assignee under a complete assignment, the right to maintain this lawsuit belongs to

---

[59] *Id.*

[60] *Id.* ¶ 4.

[61] *See also* Taylor Dep. at 22–23 (Taylor was hired as SolarReserve's acting CEO to maximize recoveries *for CMB.*).

[62] *See* Tr. at 18–19; Assignment ¶ 4.

[63] Tr. at 18–19 (emphasis supplied); *see also* Tr. 23 ("CMB is specifically identified as an attorney-in-fact for SolarReserve.").

*CMB*, not SolarReserve.[64] SolarReserve *has no rights* that are relevant to this action.[65] Second, multiple courts have recognized that "a grant of a mere power of attorney, short of an assignment of a claim, does not change the real party in interest."[66] In other words, a power-of-attorney from SolarReserve in favor of CMB is irrelevant to the real party in interest inquiry. The only pertinent fact is that the substantive right to bring this action belongs to a party not before the Court. For this reason, SolarReserve is an improper plaintiff under Rule 17 because it has no interest (economic or otherwise) in this proceeding.

Finally, I disagree with SolarReserve's assertion that the Company has raised the Rule 17 issue too late.[67] "Rule 17(a) is not an affirmative defense that is waived if not raised in the responsive pleadings."[68] Rather, issues under Rule 17 need only be "raised in a timely or seasonable fashion."[69] Given that the Company raised Rule 17 in its Answer, the Pretrial Order and its Answering Brief, the notion that the

---

[64] *Nat'l Union*, 1991 WL 138431, at *8.

[65] *See* Assignment at 1 (assigning "all right, title and interest" in "claims" against the Company).

[66] *See Laney v. Schneider Nat'l Carriers, Inc.*, 2011 WL 13096625, at *2 (N.D. Okla. Apr. 27, 2011) (internal quotation and citation omitted) (collecting cases).

[67] *See* Mot. *In Limine* at 11–12.

[68] *Nat'l Union*, 1991 WL 138431, at *8.

[69] *Id.*

issue was not timely raised is, at best, sophistry.[70]  For the same reason, I am satisfied

that a "reasonable time has been allowed" after the Company raised its objection

under Rule 17, and dismissal of SolarReserve's claim is not premature.[71]

## B. The Real Party in Interest Has No Rights Under the LLC Agreement

In a last-ditch effort to escape Rule 17, SolarReserve seeks shelter under Court

of Chancery Rule 25(c) by arguing the real party in interest, CMB, can be joined to

this proceeding as substitute plaintiff.[72]  Rule 25(c) states:

> In case of any transfer of interest, the action may be continued by or
> against the original party, unless the Court upon motion directs the
> person to whom the interest is transferred to be substituted in the action
> or joined with the original party.

SolarReserve's Rule 25 argument hits a wall right out of the gate because,

"Rule 25(c) [only] applies where there has been a transfer of interest during the

---

[70] *See* Def.'s Answer to Verified Compl. for Books and Records and Equitable Relief (D.I. 6) at 8; PTO § III, ¶ B(1) (page 10) (raising as its first issue for trial "[w]hether Plaintiff . . . is the real party in interest"); Def.'s Answering Pretrial Br. (D.I. 30) at 34.

[71] *See* Ct. Ch. R. 17(a) (stating that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection").

[72] *See* Pls.' Pre-Trial Opening Br. (D.I. 22) at 35–36.  At oral argument, SolarReserve's counsel seemed to shift gears and argue for substitution under Rule 17(a). *See* Tr. at 23 ("Rule 17(a) provides for an easy fix" by substituting or joining CMB.).  Under either rule, replacing SolarReserve with CMB is not an option for reasons explained below.

15

pendency of an action."[73]  SolarReserve executed the Assignment of Claims well before it filed the Complaint in this action.[74]

Even if I were to look past this procedural defect, I would find no support for SolarReserve's substitution argument either in the factual record or as a matter of law.  SolarReserve's reasoning proceeds in two steps.  First, it argues CMB is not its "unaffiliated successor" as that term is used in the LLC Agreement, where "SolarReserve Sponsor" is defined as "SolarReserve CSP Holdings, LLC excluding any unaffiliated successor."[75]  Second, because CMB is not a SolarReserve "unaffiliated successor," and is instead an "assignee," the argument goes, CMB should be entitled to Company records because CMB has been assigned SolarReserve's rights and is not expressly *excluded* by the limiting language within the LLC Agreement's information rights provision.[76]

The logical chain of this two-step argument cannot withstand the force of reality because it is forged with the flawed interpretive notion that the LLC

---

[73] *Schock Bros., Inc. v. Raskin*, 1991 WL 166076, at *1 (Del. Super. Ct. July 24, 1991); 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1958 (3d ed. 2020) ("After suit is brought, Rule 25(c) becomes the relevant provision.").

[74] *Compare* Compl. ¶ 1 (filed February 6, 2020), *with* Assignment (dated December 31, 2019).

[75] LLC Agreement § 1.1 (definition of "SolarReserve Sponsor").

[76] Tr. at 17–19.

Agreement's exclusionary language may be employed to establish an affirmative right. As stated above, in Section 7.2, the LLC Agreement grants "Sponsor Entities" a circumscribed right to inspect Company books and records.[77] "SolarReserve CSP Holdings, LLC" (i.e., SolarReserve) is a Sponsor Entity.[78] SolarReserve has not even attempted to proffer a reasonable construction of the LLC Agreement wherein *CMB* fits within the definition as a "Sponsor Entity."[79] It could not offer such a construction because the LLC Agreement defines Sponsor Entities, in relevant part, as SolarReserve "*excluding*" its unaffiliated successors.[80]

Even if CMB is not SolarReserve's unaffiliated successor, its status as assignee does not, *ipso facto* or *ipso jure*, make CMB the same as SolarReserve, the only entity with inspection rights under the LLC Agreement.[81] To the contrary, as explained below, this record supports a finding that SolarReserve alone was afforded

---

[77] LLC Agreement § 7.2.

[78] LLC Agreement § 1.1 (definition of "SolarReserve Sponsor").

[79] A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction; rather, the test for ambiguity is whether "the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings." *See Bathla v. 913 Market, LLC*, 200 A.3d 754, 759–60 (Del. 2018) (internal citations and quotation omitted).

[80] LLC Agreement § 1.1 (definition of "SolarReserve Sponsor").

[81] LLC Agreement § 1.1 (definitions of "Sponsor Entity" and "SolarReserve Sponsor"), § 7.2.

a personal right to inspect Company records, and that any attempt to assign that right to CMB would be ineffective.[82]

The LLC Agreement's drafters knew how to include a Sponsor Entity's assignees within the definition of Sponsor Entity (and thereby extend the inspection right).[83] As noted above, "Santander Sponsor" (one of the "Sponsor Entities") *includes* "assignees, transferees and successors."[84] Because I must give effect to the plain meaning of the LLC Agreement, CMB has no information rights under that agreement because it is not SolarReserve, and the definition of SolarReserve Sponsor does *not include* SolarReserve's assignees.[85]

---

[82] *See Tenneco Auto. Inc. v. El Paso Corp.*, 2002 WL 453930, at *1–2 (Del. Ch. Mar. 20, 2002) (To determine whether or not a contract right is assignable, courts must "look to the language of [the parties'] agreement, read as a whole, in an effort to discern the parties' collective intent."); *see also* Taylor Dep. at 22–23 (Taylor is pursuing claims for CMB's benefit), 26 (Taylor is not attempting to assist a SolarReserve Parent affiliate "with its economic recovery.").

[83] *Norton v. K-Sea Transp. P'rs*, 67 A.3d 354, 360 (Del. 2013) (interpreting a contract according to its "plain meaning" when read "as a whole" and declining to infer sloppy drafting when the agreement's drafters clearly "knew how to impose an affirmative obligation when they so intended").

[84] LLC Agreement § 1.1 (definition of "Santander Sponsor").

[85] *Compare* LLC Agreement § 1.1 (defining "Santander Sponsor" to include "assignees, transferees and successors"), *with* § 1.1 (defining "SolarReserve Sponsor" to mean "SolarReserve CSP Holdings, LLC excluding any unaffiliated successor").

## III. CONCLUSION

Based on the foregoing, judgment will be entered in favor of the Company. The parties shall confer and submit a proposed form of final judgment within five (5) days, along with correspondence regarding any remaining issues that must be addressed by the Court.