VAUGHN, Justice, dissenting:
The Superior Court granted summary judgment on a theory that InvestUSA had not perfected a claim on title by filing a notice of pendency. As the Superior Court put it, "there was no cloud on title because of a potential claim from InvestUSA because InvestUSA had not perfected (nor did it seek to perfect) a lis pendens lien."[1] On this reasoning, the fact that First American Title Insurance Company proposed to include an exception for the InvestUSA contract in Mr. Bathla's owner's title insurance policy did not defeat 913 Market's ability to deliver good title because the InvestUSA contract was never a cloud on title.
I think the Superior Court erred by allowing its decision to be influenced by the doctrine of lis pendens . The law of lis pendens establishes a method by which a party asserting a claim on title to real property in a pending civil action may give constructive notice of that claim to persons acquiring an interest in the property.[2] Where a party has actual notice of the claim from an independent source, however, the giving or lack of giving of constructive notice through the filing or non-filing of a notice of pendency is irrelevant. Notice is notice, whether it is actual or constructive. In this case, Bathla had actual notice of InvestUSA's contract when he signed his contract. Since Bathla had actual notice of the InvestUSA contract, the filing of a notice of pendency would be superfluous, and the non-filing of a notice of pendency has no bearing on the rights and liabilities of the parties.
The majority's decision is that the mere possibility that InvestUSA might assert a claim against the property does not constitute an encumbrance, and, in any event, Delaware's race recording statute would have extinguished any such claim if Bathla had simply gone to settlement and recorded his deed.
I think the principle that should govern this case is that one who takes title to property with notice of an equity takes subject to that equity. An early case discussing this principle is Cieniewicz v. Sliwka .[3] In that case, Mr. and Mrs. Sliwka owned real property, and they entered into an agreement to sell that property to Mr. and Mrs. Cieniewicz.[4] The Sliwkas, however, then conveyed the premises by deed to a couple named Kopanski, who in turn conveyed the premises to a couple named Boc.[5] The Cieniewiczs filed an action for specific performance against the Sliwkas and the Bocs, seeking to have the Bocs honor the Cieniewiczs' contract with the Sliwkas.[6] The Chancellor reasoned that in order for the Bocs to defend successfully against the Cieniewiczs' claim, the burden *765 was on the Bocs to establish that either they or the Kopanskis were bona fide purchasers for valuable consideration without notice of the Cieniewiczs' claim.[7] The Chancellor concluded on the facts that both the Kopanskis and the Bocs were bona fide purchasers for value without notice of the Cieniewiczs' claim.[8] The Cieniewiczs' claim for specific performance was therefore denied.[9]
Another example of a case applying this principle is Marsh v. Marsh .[10] In that case, Franklin and Theresa Marsh entered into an agreement of sale with Double 'S' Construction Co. to purchase a dwelling to be erected on a lot.[11] While the house was under construction, Franklin and Theresa separated.[12] Upon completion of the house, Double 'S' wished to proceed with settlement.[13] Franklin told Double 'S' that he and Theresa were getting a divorce, but that his son Wayne, and his wife Mary, would proceed with settlement.[14] Without notice to Theresa, Wayne and Mary completed settlement, and the property was deeded to them.[15] Franklin paid part of the purchase price from his funds, and the balance was paid through a mortgage.[16] Franklin, Wayne and Mary agreed that they would jointly occupy the house and Franklin would bear all costs including the mortgage payments.[17] After settlement, however, Franklin and Theresa reconciled temporarily and moved into the property. The Court of Chancery, citing Cieniewicz , found that Theresa had an equitable interest in the property as a vendee in the agreement of sale with Double 'S' and that Wayne and Mary had notice of that interest. Applying the principle that one taking title to property with notice of an outstanding equity takes subject to that equity, the court impressed an equitable lien in Theresa's favor on the property for one half of the amount of that portion of the purchase price which Franklin had paid from his funds.[18]
Cieniewicz predates our pure race recording statute. The deed involved in Marsh was recorded in 1967. Our pure race recoding statute was adopted in 1968. But in the 1993 case of Handler Construction, Inc. v. CoreStates Bank, N.A. , this Court stated, "The foregoing fundamental rule of equity, long recognized by Delaware courts, is that 'a party taking title with notice of an equity takes subject to that equity.' "[19] That case involved a dispute between two mortgagees. The first mortgage lacked a seal and, for that reason, was deemed an equitable mortgage only.[20] The second mortgage holder (Handler Construction) had both constructive and actual knowledge of the first mortgage.[21] One of Handler Construction's contentions was that an equitable mortgage *766 was enforceable only between the parties to the equitable mortgage and foreclosure of that mortgage did not discharge a subsequently recorded mortgage. This Court applied the principle that a party taking with notice of an equity takes subject to that equity in rejecting that contention.[22] Handler is distinguishable from this case in that it involved a dispute between the holders of two recorded mortgages.[23] This Court's assertion of the principle that a party taking with notice of an equity takes subject to that equity is, nonetheless, a forceful restatement of the rule, and the majority has not cited any case from this Court that has overruled the rule or found that the pure race recording statute has overruled it.[24]
The title agent for First American was well aware of the rule that one taking title to property with notice of an equity takes subject to that equity, as appears from the following email he wrote to counsel for 913 Market on September 14, 2016: "Rich - we still have the issue of the open 1st contract. We can not close on the 2nd contract w/o taking an exception (unless there is a formal release of the 1st contract)."[25] The title agent explained the issue further in a later email:
Rich - a couple of things to think about and give me a call:
1. It is my opinion no title company will insure this deal without the exception we are taking. Any other title company would know about the first contract from the Seller['s] Title Affidavit.
2. To reiterate, if first buyer 'believes' Seller defaulted, he could sue for specific performance under the contract (which would result in the full purchase price/property being awarded if successful) - this is why we need the exception.[26]
The title agent's legal analysis is consistent with what I have always understood to be the law.
The attorney for 913 Market responded to the title agent's first email this way:
Over 60 days have elapsed since closing was to have occurred under the initial contract. The potential risk of a successful claim from a buyer that has been silent for over 60 days (even if time was not of the essence which is not the case here) cannot be substantial. This is a situation involving a client that has done multiple closings with your firm, and we are sincerely disappointed that you feel as stated below. Given the silence from the initial buyer our client will be proceeding against it to obtain payment of the deposit in accordance with its rights under the terminated contract.[27]
*767 The attorney for 913 Market did not argue that there was no need for the new exception because the recording of Bathla's deed would cut off any possible claim from InvestUSA under the recording statute. Instead, he argued that there was no need for the exception because 913 Market had terminated the InvestUSA contract and the risk of InvestUSA asserting a claim against Bathla could not be substantial.
The title agent was unpersuaded by the argument of 913 Market's attorney and still considered the InvestUSA contract an encumbrance requiring an exception in the title policy. The record indicates that Bathla and his attorney learned that First American would be taking an exception for the InvestUSA contract on September 15, 2016, four days before the contractual settlement date. On September 18, Bathla's attorney wrote to the attorney for 913 Market and stated, "This new exception indicates that the Seller is unable to meet the condition precedent in Section 4.1(a) of the Agreement to convey the title subject only to the same exceptions as those listed in Seller's original title policy."[28] He also noted that his "client is still interested in purchasing the Property on the same terms and conditions contained in the Agreement" and requested "a short extension to resolve this issue."[29] It should come as no surprise to anyone that Bathla and his attorney would be alarmed to learn that First American planned on taking an exception for the InvestUSA contract. The attorney for 913 Market rebuffed the request for a short extension and took the position that if Bathla did not settle on September 19, he would be in default.
The recitals in Bathla's contract, although not entirely consistent with each other, describe Bathla's contract as a "backup" contract, to become a "primary contract" upon termination of the InvestUSA agreement.[30] Nothing in the record indicates that 913 Market provided Bathla with information showing a satisfactory termination of the InvestUSA contract or the circumstances explaining why that contract had failed to settle. The trial court's only comment on the status of the InvestUSA contract was: "for reasons not apparent here, InvestUSA failed to close on the property."[31] The exchange of correspondence by the attorneys on September 15 and 18 apparently resulted in a standoff that led to this litigation.
If an agreement of sale is executed and acknowledged with the intent that it be recorded in the Office of the Recorder of Deeds, as is often done with long-term installment sales agreements, I would agree that the priority of the agreement is subject to Delaware's pure race recording statute. In this case, the InvestUSA contract was un-recordable because it did not contain an acknowledgement. It is common for agreements of sale which are expected to go to settlement in a relatively short period of time to lack an acknowledgement. I would find that a party taking title with notice of the outstanding equitable interest of a vendee in such an agreement takes title subject to that interest.
The issue in this case, as I see it, is whether the InvestUSA contract, which *768 became an encumbrance when signed on June 15, 2016, was an encumbrance when the time came for settlement on the Bathla contract in September or whether, by then, the risk of litigation it presented had become so remote and improbable that it was no longer an encumbrance. I would reverse the judgment of the Superior Court and remand the case for further proceedings to include findings on this issue.

913 Market, LLC v. Bathla , C.A. No. N16C-11-149 JAP (Del. Super. Oct. 31, 2017).

See 25 Del. C. §§ 1601, 1603.

133 A. 695 (Del. Ch. 1926).

Id. at 695.

Id.

Id.

Id.

Id. at 695-96.

Id. at 696.

261 A.2d 540 (Del. Ch. 1970).

Id. at 541.

Id.

Id.

Id. at 541-42.

Id. at 542.

Id.

Id.

Id. at 542-43.

633 A.2d 356, 364 (Del. 1993) (quoting John Adams, The Doctrine of Equity 151 (Robert Ralston, ed., 8th ed. 1890) ).

Id. at 363.

Id. at 366.

Id. at 364-65.

See id. at 358.

See, e.g. , E. Sav. Bank, FSB v. Cach, LLC , 124 A.3d 585, 592 (Del. 2015) (finding, under the circumstances, "no equitable reason to set aside the provisions of Delaware's pure race recording statute"). Moreover, the North Carolina and Louisiana cases are inapplicable here because, among other reasons, the recording statutes in those states expressly apply to (and thus set the priority of) contracts to convey land. See La. Civ. Code Ann. art. 3338(3) ; N.C. Gen. Stat. Ann. § 47-18(a).

App. to Appellant's Opening Br. at A-295.

Id. at A-296.

Id. The majority refers to First American as Bathla's title insurer, which is true. But it is also true that First American was brought into the transaction by 913 Market, and there are references in the record to a substantial business relationship between 913 Market and First American.

Id. at A-134.

Id.

Id. at A-16.

913 Market, LLC v. Bathla , 2017 WL 1507539, at *1 (Del. Super. Apr. 26, 2017). The trial court made no findings of fact concerning why the settlement between 913 Market and InvestUSA fell through. There are allegations in the record that Bathla did not settle because he could not get financing, but there are no findings of fact on that allegation.