COURT OF CHANCERY
OF THE
STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 31, 2024

John M. Seaman, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807

S. Michael Sirkin, Esquire
Ross Aronstam & Moritz LLP
Hercules Building
1313 North Market Street, Suite 1001
Wilmington, DE  19801

Samuel T. Hirzel, II, Esquire
Heyman Enerio Gattuso & Hirzel LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801

> RE: ***ETC Northeast Field Services, LLC v. Gregory D. Muse et al.,***
> Civil Action No. 2023-0249-MTZ

Dear Counsel:

This case arises out of a complex contractual and fiduciary network of people and companies that produce, gather, and move natural gas.  The gas producer was a member of the gas gatherer's two-member holding company, and the producer and gatherer were parties to a gas gathering agreement.  The gatherer's holding company was up for sale; in negotiating that sale, the plaintiff alleges that the producer's officers (the "Producer Defendants") and the gatherer's lame-duck fiduciaries (the "Fiduciary Defendants") entered into a side deal to the gathering agreement.  The side deal would take effect only if the sale occurred, and

it would permit the producer to demand the gatherer construct and pay for compressor stations with high-pressure discharge pipelines. The gathering agreement was also amended, and a purchase agreement was executed to sell the gatherer's holding company to the buyer. When the purchase agreement closed, the buyer became the gatherer's parent.

After the sale closed, the producer asked the gatherer to construct a compressor station and high-pressure discharge pipeline. The buyer was not aware of the side deal at the time, and only learned about it in an arbitration many years later. Under the buyer's ownership, the gatherer constructed the compressor station but refused to construct the pipeline. The producer filed an arbitration demand for breach of the gathering agreement as amended, and the arbitration panel concluded the gatherer's refusal to construct the pipeline was a breach of that agreement's plain terms.

The gatherer turned to this Court, asserting the Fiduciary Defendants breached their fiduciary duties in negotiating the side deal, and the Producer Defendants aided and abetted the breach. The defendants have moved to dismiss those claims based on laches. The gatherer's tolling argument, that it did not know about the side deal until the arbitration, is an impermissible collateral attack on the

final arbitration award. With the gatherer's tolling argument off the table, the

defendants' laches defense prevails.

## I. Background[1]

I write for the parties, and rely on their knowledge of the facts and, except

where otherwise indicated, the defined terms this Court has used to date.[2]

### A. The Side Deal Is Negotiated.

On March 7, 2014, Gatherer and Producer entered the Gathering

Agreement.[3] In the fall of 2016, as Buyer was negotiating the acquisition of

Gatherer's sole member HoldCo, the Fiduciary Defendants and the Producer

---

[1] For purposes of the pending motions, I draw the following facts from the first amended verified complaint and the documents attached to or integral to it, admissions on file, together with any affidavits, discovery of record and public filings. *See Ryan v. Gifford*, 935 A.2d 258, 265 (Del. 2007); *Himawan v. Cephalon, Inc.*, 2018 WL 6822708, at *2 (Del. Ch. Dec. 28, 2018); *In re Rural Metro Corp. S'holders Litig.*, 2013 WL 6634009, at *7 (Del. Ch. Dec. 17, 2013) ("Applying [Delaware] Rule [of Evidence] 201, Delaware courts have taken judicial notice of publicly available documents that are required by law to be filed, and are actually filed, with federal or state officials."); Ct. Ch. R. 12(b).

Citations in the form of "Am. Compl." refer to the plaintiff's First Amended Verified Complaint, available at D.I. 46; citations in the form of "Fiduciary DOB" refer to the Fiduciary Defendants' Opening Brief in Support of their Motion to Dismiss, available at D.I. 56; citations in the form of "Producer DOB" refer to the Producer Defendants' Opening Brief in Support of their Motion to Dismiss, available at D.I. 57; citations in the form of "PAB" refer to the plaintiff's Answering Brief in Opposition to Defendants' Motions to Dismiss, available at D.I. 64; citations in the form of "Producer DRB" refer to the Producer Defendants' Reply Brief in Support of their Motion to Dismiss, available at D.I. 72.

[2] *Johnston v. Cardinal PA Hldgs., LLC*, C.A. No. 2023-0565-MTZ, at 4 (Del. Ch. Nov. 21, 2023) (TRANSCRIPT).

[3] D.I. 48, Ex. F [hereinafter "Gathering Agreement"].

Defendants (together, the "Defendants") agreed in an e-mail exchange that, conditioned upon Buyer's acquisition of Gatherer, Producer could demand Gatherer construct compressor stations and high-pressure discharge pipelines at Gatherer's expense, and at no cost to Producer.[4]  The Gatherer calls this agreement "the Side Deal."[5]

On February 3, 2017, Gatherer and Producer executed the Second Amendment to the Gathering Agreement.[6]  Its effectiveness was conditioned upon Buyer's acquisition of Gatherer.[7]  That same day, HoldCo was sold to Buyer, and Buyer became Gatherer's parent.

On May 11, 2017, Producer submitted an expansion notice to Gatherer under the Gathering Agreement, and Gatherer responded by constructing a new

---

[4] D.I. 48, Ex. H at PER-ETCFS2-00140007–14.

[5] The parties dispute whether the Side Deal is a separate transaction, or an early articulation of the Gathering Agreement as amended by the Second Amendment.  *See*, *e.g.*, Producer DOB 8–9; Producer DRB 16.  I reference it as the Side Deal without passing judgment on whether a Side Deal existed or whether the disputed terms were embodied in the Gathering Agreement as amended.

[6] Gathering Agreement at 49–52 [hereinafter "Second Amendment"].  Gatherer did not consistently paginate the Gathering Agreement, and it did not include numbered paragraphs, so I have counted the PDF pages.

[7] *Id.* § 4 ("This Amendment will not be effective unless and until the [a]cquisition is consummated by the [HoldCo] [m]embers and [Buyer].").

compressor facility, named Freedom Station.[8]  Gatherer did not begin construction of a high-pressure discharge pipeline for redelivering gas from Freedom Station to any of the Gathering Agreement's named delivery points.[9]

Producer purportedly believed the Gathering Agreement obligated Gatherer to construct the compressor station with a high-pressure discharge pipeline for the redelivery of gas to each named delivery point; Gatherer purportedly believed the agreement did not express such an obligation.[10]  On July 6, 2018, Producer formally asked Gatherer to construct a high-pressure discharge pipeline connecting the Freedom Station to the existing compressor station for redelivery to the

---

[8] Am. Compl. ¶ 48; D.I. 57, Ex. 1 [hereinafter "Interim Award"] at 9.  In its amended complaint, Gatherer addresses the arbitration award's determination and characterizes it as "[b]ased in large part on the Side-Deal and Second Amendment."  Am. Compl. ¶ 55. It additionally references the collateral attack doctrine and declares, "[t]o be clear, through this proceeding, [Gatherer] does not seek to appeal, modify, vacate, attack, or otherwise challenge the [a]ward, any determinations of the tribunal that issued the [a]ward, or the [a]rbitration generally."  *Id.* ¶ 59.  The arbitration award serves as the source for these facts as pleaded in the amended complaint; it is integral to the claim and incorporated into the complaint.  *In re Gardner Denver, Inc.*, 2014 WL 715705, at *3 (Del. Ch. Feb. 21, 2014) (explaining whether a document is integral to a claim and incorporated into a complaint "is largely a facts-and-circumstances inquiry," that there is no "bright-line rule," and that this Court "may conclude a document is integral to the claim if it is the 'source for the . . . facts as pled in the complaint'"); *Fortis Advisors LLC v. Allergan W.C. Hldg. Inc.*, 2019 WL 5588876, at *3 (Del. Ch. Oct. 30, 2019) (addressing an amended complaint's references to defendant's exhibits and finding plaintiff used those referenced exhibits to form a factual foundation for its claim).

[9] Am. Compl. ¶ 48; Interim Award at 11–12; Gathering Agreement § 7.2, Ex. B.

[10] Am. Compl. ¶¶ 48–49; Interim Award at 11 (describing an e-mail in which "Muse expressed shock . . . [for Gatherer's refusal to build a high-pressure pipeline] and recommended the [Buyer] Team re-read the Gathering Agreement").

MarkWest delivery point.[11]  Gatherer refused.[12]  The parties continued into 2020 to dispute whether Gatherer was responsible for building that pipeline, even after an explosion disabled the only pipeline connected to Freedom Station and incurred regulatory consequences.[13]

> **B.    Arbitration Ensues; Gatherer Learns Of The Side Deal; And Arbitrators Decide The Side Deal Terms Are In The Amended Gathering Agreement.**

The Gathering Agreement contains an arbitration provision.[14]  In March 2021, Producer filed an arbitration demand against Gatherer, "which included a claim for breach of [the Gathering Agreement] for [Gatherer's] failure to comply with its . . . obligation to construct high-pressure discharge pipelines at [Producer's] request."[15]

In discovery, Producer disclosed the e-mails negotiating the Side Deal.[16] Gatherer, managed under Buyer instead of by the Fiduciary Defendants, did not know about the Side Deal until the e-mails were produced in the arbitration.[17]

---

[11] Am. Compl. ¶ 49; Interim Award 11–12.

[12] Am. Compl. ¶ 50.

[13] Interim Award at 13–15; D.I. 56, Ex. E.

[14] Gathering Agreement § 16.7.

[15] Am. Compl. ¶ 52; Interim Award at 2 (indicating the claims were brought under the Gathering Agreement).

[16] Am. Compl. ¶ 54.

On September 8, 2022, the arbitration panel determined the Gathering Agreement unambiguously expressed the Side Deal terms: Gatherer's "obligation under the Gathering Agreement to construct, own, and operate the Gathering System to receive and deliver [Producer's] gas to each of the contractually designated Delivery Points, including the MarkWest Delivery Point, [wa]s clear and unambiguous."[18] The panel concluded this obligation meant "all compressor stations on the Gathering system must deliver gas to each delivery point," and held that "[Gatherer] breached the Gathering Agreement" by "never commenc[ing] construction activities for a pipeline connection so Freedom Station can deliver gas to the MarkWest Delivery Point."[19] The panel concluded Gatherer breached, and was breaching, the Gathering Agreement, and awarded monetary damages.[20] A September 8 interim award constituted the "full settlement of all claims and counterclaims submitted to th[e] arbitration," but due to litigation in Texas, it did

---

[17] *Id.*

[18] Interim Award at 17.

[19] Interim Award at 15–17; *id.* at 29 ("[Gatherer] refused to build a pipeline connection so gas could flow from Freedom Station to the MarkWest Delivery Point without relying on the Revolution Pipeline. [Gatherer] . . . refused to install pipelines to provide the capability to deliver gas to the MarkWest Delivery Point. . . . [Gatherer's] breach also involved gross negligence.").

[20] *Id.* at 42 (totaling $160,806,936 in direct and consequential damages and prejudgment interest as of September 8, 2022).

not decide the issue of attorneys' fees and costs.[21]  A November 21 final award followed.[22]  It fully incorporated the interim award and decided the issue of attorneys' fees, "completely resolv[ing] and decid[ing] all claims, counterclaims and disputed issues."[23]

Gatherer and Producer took the final award to Texas state court:  Gatherer sought vacatur, and Producer sought confirmation.[24]  On January 11, the Court confirmed the "[f]inal [a]ward."[25]

### C.    Litigation Ensues.

On February 27, Gatherer sued in this Court, asserting a breach of fiduciary duty claim against Fiduciary Defendants, and an aiding and abetting claim against Producer Defendants, for their conduct relating to the Side Deal.[26]  The Defendants moved to dismiss, and the parties briefed the motions.[27]  I heard oral argument on December 15, 2023.[28]

---

[21] *Id.*; D.I. 57, Ex. 2 ¶¶ 1–13 [hereinafter "Final Award"].

[22] *See* Final Award at 4.

[23] *Id.* ¶ 20.

[24] D.I. 65, Ex. A, at 1 nn.2–4.

[25] *Id.* at 2.

[26] D.I. 1.

[27] D.I. 32; D.I. 46; D.I. 56; D.I. 57; D.I. 64; D.I. 71; D.I. 72.

[28] D.I. 86.

I needed more help from the parties. I asked for their views on the Gathering Agreement and the Second Amendment, what each facially requires, and whether the Side Deal conferred additional and independent obligations on Gatherer.[29] Second, I asked the parties to explain the final arbitral award and whether it determines the disputed obligation arises from the Gathering Agreement and Second Amendment.[30] The parties completed that briefing by the end of January 2024.[31]

## II. ANALYSIS

Defendants have moved to dismiss Gatherer's claims under Court of Chancery Rule 12(b)(6), asserting a gating issue of laches.[32] The governing standard for a Rule 12(b)(6) motion to dismiss is familiar:

---

[29] *Id.* at 95.

[30] *Id.* at 96.

[31] D.I. 87; D.I. 88; D.I. 89 [hereinafter "POL"]; D.I. 93; D.I. 94; D.I. 95 [hereinafter "PRL"].

[32] The laches defense is primarily presented in the Producer Defendants' briefing. *See, e.g.*, Producer DOB 2, 34. The Fiduciary Defendants join. *See, e.g.*, Fiduciary DOB 30–31 (arguing Gatherer's claims are time-barred and referring the Court to Producer DOB for its collateral attack arguments).

> (i) [A]ll well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[33]

The touchstone "to survive a motion to dismiss is reasonable conceivability."[34]

This standard is "minimal"[35] and plaintiff-friendly.[36] "Indeed, it may, as a factual matter, ultimately prove impossible for the plaintiff to prove [its] claims at a later stage of a proceeding, but that is not the test to survive a motion to dismiss."[37]

Despite this forgiving standard, the Court need not accept conclusory allegations unsupported by specific facts or draw unreasonable inferences in favor of the

---

[33] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes omitted) (quoting *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 227 (Del. 1982)).

[34] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011) (internal quotation marks omitted).

[35] *Id.* at 536.

[36] *See Clouser v. Doherty*, 175 A.3d 86, 2017 WL 3947404, at *9 (Del. Sept. 7, 2017) (TABLE); *In re USG Corp. S'holder Litig.*, 2021 WL 930620, at *3–4 (Del. Ch. Mar. 11, 2021); *In re Trados Inc. S'holder Litig.*, 2009 WL 2225958, at *8 (Del. Ch. July 24, 2009).

[37] *Cent. Mortg.*, 27 A.3d at 536.

nonmoving party.[38]  "Moreover, the court is not required to accept every strained interpretation of the allegations proposed by the plaintiff."[39]

"For a court to grant a motion to dismiss on timeliness grounds under Rule 12(b)(6), the complaint's allegations must show that the claim was filed too late."[40] Gatherer brought equitable claims seeking legal relief.  "When an equitable claim seeks legal relief, the Court will apply the statute of limitations by analogy . . . and will bar claims outside the limitations period absent tolling or extraordinary circumstances."[41]  "Under Delaware law, claims for breach of fiduciary duty [and] aiding and abetting a breach of fiduciary duty . . . are generally addressed with reference to a three-year statute of limitations."[42]  And so, claims filed outside the three-year period are presumptively stale.[43]  "The general law in Delaware is that the statute of limitations begins to run, *i.e.*, the cause of action accrues, at the time

---

[38] *E.g.*, *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).

[39] *Trados*, 2009 WL 2225958, at *4 (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006)).

[40] *Ont. Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 294 A.3d 65, 83 (Del. Ch. 2023).

[41] *Kraft v. WisdomTree, Inv., Inc.*, 145 A.3d 969, 983 (Del. Ch. 2016).

[42] *Dubroff v. Wren Hldgs., LLC*, 2011 WL 5137175, at *12 (Del. Ch. Oct. 28, 2011) (first citing *Shandler v. DLJ Merch. Banking, Inc.*, 2010 WL 2929654, at *9, n.88 (Del. Ch. July 26, 2010); then citing 10 *Del. C.* § 8106).

[43] *Ont. Provincial*, 294 A.3d at 84 ("[The] statute of limitations establishes a presumptive period within which the claim must be filed after it accrues.").

of the alleged wrongful act, even if the plaintiff is ignorant of the cause of action."[44]

### A.    Gatherer's Claims Are Presumptively Untimely.

The Side Deal was negotiated between October 31 and November 2, 2016.[45] The Second Amendment was signed February 3, 2017.[46]  Gatherer's claims are explicitly based only on the Side Deal:  it argues neither the original Gathering Agreement nor the Second Amendment contain any obligation to construct high-pressure discharge pipelines.[47]  Instead, Gatherer contends the Side Deal, as the "secret" intent of the Second Amendment,[48] "imposed new and additional obligations on [Gatherer]."[49]  Specifically, it created "the obligation to build and fund future high-pressure discharge pipelines at [Producer's] request and [Gatherer's] cost."[50]  Gatherer alleges "[it] received nothing in return for this onerous obligation," but all of the Defendants "personally profited off the Side

---

[44] *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998).

[45] D.I. 48, Ex. H at PER-ETCFS2-00140007–14.

[46] Second Amendment at 49.

[47] *See*, *e.g.*, POL 7–16.

[48] Am. Compl. ¶¶ 43, 71.

[49] POL 16.

[50] *Id*. at 17.

Deal, as did their affiliated entities."[51]

Thus, accepting these allegations as true, Gatherer's injuries occurred when Defendants caused Gatherer to enter the Side Deal sometime between October 31 through November 2, 2016; they certainly accrued by the execution of the Second Amendment on February 3, 2017.[52] If the statute of limitations was not tolled, it had run by February 3, 2020. Gatherer filed its original complaint on February 27, 2023.

### B. The Arbitration Award Precludes Tolling.

"[T]olling doctrines can extend the actionable period, enabling the plaintiff to recover over a longer time frame,"[53] but the plaintiff "bears the burden of showing that the statute was tolled."[54] Gatherer argues its claims are timely because the applicable statutes of limitations were tolled under three doctrines: (i) inherently unknowable injury, (ii) fraudulent concealment, and (iii) equitable

---

[51] Am. Compl. ¶ 3.

[52] D.I. 48, Ex. H at PER-ETCFS2-00140007–14; Second Amendment at 49.

[53] *W. Palm Beach Firefighters' Pension Fund v. Moelis & Co.*, 310 A.3d 985, 995 (Del. Ch. 2024) (quoting *Lebanon Cnty. Empls.' Ret. Fund v. Collis*, 287 A.3d 1160, 1179 (Del. Ch. 2022)).

[54] *Largo Legacy Grp., LLC v. Charles*, 2021 WL 2692426, at *11 (Del. Ch. June 30, 2021) (quoting *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 583 (Del. Ch. 2007)).

tolling.[55]

None of these tolling doctrines will operate if the obligation to construct the pipeline was clear and unambiguous in the amended Gathering Agreement. "Under Delaware law, . . . notice universally limits tolling doctrines. A plaintiff cannot invoke tolling doctrines to push the timeliness period beyond the point when the plaintiff 'was objectively aware, or should have been aware, of facts giving rise to the wrong.'"[56] Where a party has assented to clear contractual terms, that party is on notice of those terms.[57] So Gatherer knew, or should have known, the clear and unambiguous content of the Gathering Agreement and Second Amendment in 2017. Claims based on those obligations were stale by 2020.

---

[55] PAB 47.

[56] *Lebanon Cnty. Empls.' Ret. Fund v. Collis*, 287 A.3d 1160, 1212 (Del. Ch. 2022) (quoting *Tyson Foods*, 919 A.2d at 585).

[57] *See* Restatement (Second) of Contracts § 157 cmt. b (1981) ("Generally, one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms . . . ; his assent is deemed to cover unknown as well as known terms."); *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *6–7 (Del. Ch. Mar. 27, 2014) (declaring "clear terms [in an agreement] . . . place a [party] on actual notice" of that agreement's content when she signs or receives it); *Payne v. Samsung Elec. Am., Inc.*, 2024 WL 726907, at *5 (Del. Super. Feb. 21, 2024) (noting that where a party is given "reasonable notice of the terms of the . . . agreement" by some form of document production, the party is "bound by those terms, even if he failed to read them," because the party "knew or should have known about such terms"); *see also Bathla v. 913 Mkt., LLC*, 200 A.3d 754, 757, 763 (Del. 2018) (discussing the agreement's recitals and concluding the plaintiff "knew or should have known[] from the recitals in the contract he signed" of potential liabilities related to a separate agreement).

To avoid that conclusion for the construction obligation, Gatherer argues it arose not from the amended Gathering Agreement, but from the Side Deal. Gatherer asserts the Side Deal was inherently unknowable until Producer disclosed it during arbitration proceedings.[58] Gatherer concludes its claims are timely because the statute of limitations was tolled until Gatherer had inquiry notice of the construction obligation.

Gatherer's position is inconsistent with the arbitration proceedings and final award. Producer initiated arbitration under the Gathering Agreement and alleged Gatherer breached that agreement by not fulfilling its construction obligation.[59] The arbitration panel issued an award against Gatherer for Gatherer's breach of the Gathering Agreement.[60]

To demonstrate tolling is warranted, Gatherer must confront the arbitration award. Gatherer tries two feints before dropping its gloves for an unabashed collateral attack. Gatherer's arguments progress from (1) its tolling argument is

---

[58] PAB 48–49; POL 17 ("[T]he Side Deal creates an obligation not reflected in the Second Amendment—the obligation to build and fund future high-pressure discharge pipelines at [Producer's] request and [Gatherer's] cost.").

[59] Am. Compl. ¶ 52 (indicating Producer's arbitration demand "included a claim for breach of [the Gathering Agreement] for [Gatherer's] failure to comply with its . . . obligation to construct high-pressure discharge pipelines at [Producer's] request"); Interim Award at 2 (indicating the claims were brought under the Gathering Agreement).

[60] *See, e.g.*, Interim Award at 16–17.

supported by the arbitration award, to (2) its tolling argument does not conflict with the arbitration award; then (3) the arbitration panel erred; and finally (4) the Court should ignore the award because it does not address notice, it is not final, and it is inadmissible. The first two arguments are unsuccessful, and the second two reveal that Gatherer's tolling argument relies on an impermissible collateral attack.

Gatherer is left with the award's determination that its obligations arose out of the plain terms of the Gathering Agreement. That determination makes tolling unavailable. Gatherer's claims are untimely.

### 1. The Arbitration Award Does Not Support Gatherer's Argument.

First, Gatherer tries to argue the award supports its tolling defense.[61] Gatherer contends the panel agreed with Producer that the Side Deal supplied the construction obligation as the unwritten and secret intent of the Second Amendment. Gatherer characterizes the award's findings as largely "based . . . on

---

[61] *See, e.g.*, PAB 20 ("[Producer's] argument in the [a]rbitration was that the ***unwritten intent*** of the parties (i.e. the Side-Deal) in drafting and executing the Second Amendment to the Gathering Agreement was to require [Gatherer] to build high-pressure discharge pipelines at [Producer's] request. Thus, [Gatherer] does not collaterally attack the [a]rbitration. [Gatherer's] claims and allegations in this action are entirely consistent with the determinations made in the [a]rbitration.").

the Side Deal and secret intent of the Second Amendment."[62]

Not so. The award never references the Side Deal. The award never discusses the purported negotiations that took place between Fiduciary Defendants and Producer Defendants in early November 2016. The award discusses e-mails six times, but none of those discussions involve the e-mail correspondence that Gatherer has named the Side Deal.[63] The award does not say the intent of the Second Amendment came from the Side Deal. The award never discusses the intent or purpose of the Second Amendment.

Instead of finding an "unwritten"[64] and "secret"[65] intent in the Side Deal, the arbitration award found a clear and unambiguous obligation in the Gathering Agreement as amended. The panel declared "[t]he Gathering Agreement contains multiple provisions that require [Gatherer] to have its compressor stations deliver

---

[62] *Id.* at 15 ("Based in large part on the Side-Deal and the secret intent of the Second Amendment, the tribunal issued an award against [Gatherer] in the [a]rbitration."); Am. Compl. ¶ 55 (same).

[63] Interim Award at 10, 19 (discussing Gatherer's acknowledgement in internal e-mails that "a new compressor station was needed"); *id.* at 11 (discussing an e-mail correspondence between Muse and Gatherer, wherein Muse expressed shock that Gatherer refused to construct a high-pressure discharge line and suggested Gatherer re-read the Gathering Agreement); *id.* at 13 (discussing Muse's e-mail to Gatherer explaining Producer wanted a high-pressure line connecting Freedom Station to Pike Station delivery points); *id.* at 33 (discussing Gatherer's internal e-mails related to Producer's arbitration claims not relevant here).

[64] PAB 13, 20.

[65] *Id.* at 15; Am. Compl. ¶¶ 43, 61.

gas to each of the [d]elivery [p]oints."[66]    From these provisions, the panel concluded "[Gatherer's] obligation under the Gathering Agreement to construct, own, and operate the Gathering System to receive and deliver [Producer's] gas to each of the contractually designated [d]elivery [p]oints, including the MarkWest Delivery Point, is clear and unambiguous."[67]

The award does not support a tolled claim arising out of a separate Side Deal.

### 2. Gatherer's Tolling Argument Conflicts With The Arbitration Award.

From there, Gatherer takes a step back and argues Gatherer's tolling claim is not in conflict with the arbitration award, and so Gatherer cannot be contesting the award.[68]    According to Gatherer, the award did not find Gatherer's contractual obligations to include constructing high-pressure discharge pipelines.[69]    In other words, Gatherer argues its argument, that an obligation to construct high-pressure discharge pipelines was hidden and unknowable, does not contradict the award.

---

[66] Interim Award at 9–10; *id.* at 18 ("[Gatherer's] current claim that it has no obligation to deliver gas from Freedom Station to each of the Delivery Points contradicts the plain language of the Gathering Agreement . . . .").

[67] *Id.* at 17.

[68] PAB 19, 26; *but see* Producer DOB 23–24.

[69] PRL 2 ("[T]he arbitration award uses the word 'unambiguous' only twice, [and] both times in the context of delivery (not construction) obligations.").

Again, Gatherer is incorrect. The award explains Gatherer's "clear and unambiguous" obligations involved high-pressure pipelines. The award begins with an overview of the Gathering Agreement and the function of compressor stations for gas redelivery "via high-pressure pipelines to specific locations (Delivery Points)."[70] Then the award holds that "[t]he Gathering Agreement clearly and unambiguously requires [Gatherer] to deliver gas (discharged from Pike Station, Freedom Station, or any compressor station) to each of the Delivery Points on the Gathering System, and no signed writing modified that obligation."[71] Even the panel's dissenting arbitrator stated she "agree[d] with the [p]anel that [Gatherer] breached the Gathering Agreement by failing to construct a high-pressure discharge line from the Freedom compressor station to the second contracted [d]elivery [p]oint—the discharge side of the Pike compressor station."[72]

---

[70] Interim Award at 4.

[71] *Id.* at 18 ("[Gatherer's] claim that it has no obligation to deliver gas from Freedom Station to each of the Delivery Points contradicts the plain language of the Gathering Agreement."); *see also id.* at 15–17 (concluding that this clear and unambiguous obligation meant "all compressor stations on the Gathering system must deliver gas to each delivery point," the "[Gatherer] breached the Gathering Agreement" by "never commenc[ing] construction activities for a pipeline connection so Freedom Station can deliver gas to the MarkWest Delivery Point"); *id.* at 29 ("[Gatherer] refused to build a pipeline connection so gas could flow from Freedom Station to the MarkWest Delivery Point without relying on the Revolution Pipeline. [Gatherer] . . . refused to install pipelines to provide the capability to deliver gas to the MarkWest delivery point. . . . [Gatherer's] breach also involved gross negligence.").

[72] *Id.* at Dissenting Opinion at 1 (dissenting for reasons irrelevant to this action).

In addition, the arbitration award found Gatherer had a clear and unambiguous obligation both to deliver gas and to construct the means to do it. The award expressly says Gatherer's "obligation under the Gathering Agreement to ***construct***, own and operate the Gathering System to receive and deliver [Producer's] gas to each of the contractually designated Delivery Points, including the MarkWest Delivery Point, is clear and unambiguous."[73]

Gatherer's argument that the obligation to construct high-pressure pipelines was inherently unknowable conflicts with the arbitration award's conclusion that that obligation was clear and unambiguous in the Gathering Agreement.

---

[73] Interim Award 17 (emphasis added).

### 3. Gatherer's Tolling Argument Is An Impermissible Collateral Attack.

Gatherer's tolling argument constitutes a collateral attack. Gatherer tries to convince the Court otherwise. Gatherer recognizes the FAA vacatur procedures prohibit attacking the award in this action.[74] Gatherer argues that because "[it] pleads[] it is not asking this Court to vacate any portion of the [a]ward, and [because] . . . [its] claims [are] against third parties[,] . . . the FAA and its vacatur procedures have no relevance to this proceeding."[75] Gatherer is wrong again.

"A collateral attack is an attempt to 'avoid, defeat, evade, or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial.'"[76] Where a claim involving "different issues" between "different parties" "directly contradict[s]" a final order or judgment, it is considered a collateral attack and must be dismissed.[77] The "principle barring collateral attacks" is "a longstanding and deeply rooted

---

[74] Am. Compl. ¶ 59; PAB 26; *see* 9 U.S.C. §§ 10, 13.

[75] PAB 22.

[76] *In re Vale*, 2015 WL 721038, at *4 (Del. Ch. Feb. 19, 2015) (quoting *Fransen v. Conoco, Inc.*, 64 F.3d 1481, 1487 (10th Cir. 1995)).

[77] *Williams v. Wilm. Tr. Co.*, 1993 WL 331049, at *2–3 (Del. Super. Aug. 19, 1993) (rejecting plaintiffs' argument that collateral attack doctrine is not implicated where "different issues [are] being litigated [and] . . . different parties are involved," and concluding that a finding in plaintiffs' favor would "directly contradict [the] Chancery Court's Distribution Decree").

feature of . . . the common law."[78]  Its "intent is to preclude litigants from collaterally attacking the judgments of other courts"[79] or other binding fora,[80] because it is for the binding forum "of the first instance to determine the question of validity of the law, and until its decision is reversed for error by orderly review . . . its orders based on its decision are to be respected."[81]

In the arbitration setting, the "final order or judgment" is the "final award,"[82] and the FAA provides "the exclusive review process once an arbitration award

---

[78] *Heck v. Humphrey*, 512 U.S. 477, 490 n.10 (1994); *Bardon v. Land & River Improvement Co.*, 157 U.S. 327, 336 (1895) (discussing "the general rule of the common law on the subject of collateral attack"); *Robins v. Garvine*, 136 A.2d 549, 551–52 (Del. 1957) (explaining when faced with a collateral attack, the Court does not determine the merits of the collateral proceeding but only if the attack followed the prescribed procedures).

[79] *In re Vale for Asche*, 2013 WL 3804584, at *5.

[80] *See Betts v. Townsends, Inc.*, 765 A.2d 531, 534–35 (Del. 2000) (quoting *Taylor v. Hatzel & Buehler*, 258 A.2d 905, 908 (Del. 1969)) (explaining collateral attack applies to an administrative agency decision, except where the decision is "for some reason . . . void"); *Robins*, 136 A.2d at 551–52 (applying collateral attack to a sheriff's "return on the writ of venditioni exponas").

[81] *In re Vale for Asche*, 2013 WL 3804584, at *5 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995)).

[82] 9 U.S.C. § 13 (discussing an order confirming an award and, once confirmed, calling it a "judgment" that "shall have the same force and effect, in all respects, as . . . a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered"); *id.* § 10 (discussing the validation or challenge requiring that an award be "mutual, final and definite" as a prerequisite to confirmation); *see* D.I. 65, Ex. A at 2 (ordering, adjudging, and decreeing the final award was confirmed).

issues."[83]  "[A]ll challenges to an arbitration award" must be "channeled . . . to the courts through the FAA review process."[84]  "Once court review under the FAA is finished, the courthouse doors are closed to the dispute."[85]

A "party cannot escape the FAA's time-limited and exclusive review procedure by filing a follow-on arbitration [or action] attacking the outcome of the prior arbitration."[86]  Claims that "aim to modify the [f]inal [a]ward by revisiting the core issue in the . . . [a]rbitration" are dismissed as impermissible collateral attacks.[87]  A claimant's description of his attack is not dispositive.[88]  Neither is whether the parties or claims are the same.[89]  "[A] claimant 'may not transform

---

[83] *Gulf LNG Energy, LLC v. Eni USA Gas Mktg. LLC*, 242 A.3d 575, 581 (Del. 2020).

[84] *Id.* at 587.

[85] *Id.* at 584.

[86] *Id.* at 578; *see* 9 U.S.C. § 10 (delineating the exclusive mechanism for appealing arbitration awards).

[87] *Gulf LNG Energy*, 242 A.3d at 592 n.101.

[88] *Gulf LNG Energy, LLC v. Eni USA Gas Mktg. LLC*, 2019 WL 7288767, at *12 (Del. Ch. Dec. 30, 2019) (explaining the claimant's defense "boils down to the conclusory assertion that '[the claimant] does not assert [the] claim in order to undo or alter the prior [a]ward]"), *aff'd in relevant part, rev'd on other grounds*, 242 A.3d 575 (Del. 2020).

[89] *See Gulf LNG Energy*, 242 A.3d at 591 n.96; *id.* at 592 (disregarding defendant's arguments that its "claims have 'independent legal significance'" and the alleged wrongdoing "caused harm independent of its effect on the arbitration award," and concluding defendant's claims collaterally attack the final award because they "aim to modify the [f]inal [a]ward by revisiting the core issue in the [f]irst [a]rbitration"); *see also Tex. Brine Co., L.L.C. v. Am. Arb. Assoc., Inc.*, 955 F.3d 482, 487 (5th Cir. 2020)

what would ordinarily constitute an impermissible collateral attack into a proper independent action by changing defendants and altering the relief sought."[90] And it "may not file a suit in court making claims alleged to be independent but that in fact . . . attack an arbitration award."[91] The test is whether the claims "aim to modify the [f]inal [a]ward by revisiting the core issue in the [f]irst [a]rbitration."[92]

Gatherer's tolling argument amounts to an impermissible collateral attack in at least two ways. First, it revisits and contradicts the core issue of the arbitration award; second, it asks me to conclude the arbitration panel erred. "[S]uch arbitral mulligans are forbidden by the FAA."[93]

---

("Purportedly independent claims are not a basis for a challenge if they are disguised collateral attacks on the arbitration award.").

[90] *Gulf LNG Energy*, 242 A.3d at 591 n.96 (quoting *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1212–13 (6th Cir. 1982)).

[91] *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 911 (6th Cir. 2000); *see Pryor v. IAC/InterActiveCorp*, 2012 WL 2046827, at *6 (Del. Ch. June 7, 2012) (quoting *Decker*, 205 F.3d at 910).

[92] *Gulf LNG Energy*, 242 A.3d at 592.

[93] *Id.* (quoting *Arrowood Indem. Co. v. Equitas Ins. Ltd.*, 2015 WL 4597543, at *5 (S.D.N.Y. July 30, 2015)).

### a.  Gatherer's Tolling Argument Revisits And Contradicts The Arbitration Award's Core Conclusion.

Were I to find the construction obligation was inherently unknowable, this finding would contradict and "defeat . . . the force and effect of . . . [the arbitration panel's] final order or judgment" that found the same obligation was clear and unambiguous.[94]  The arbitration's core issue was whether Gatherer breached the Gathering Agreement by refusing to build a pipeline from Freedom Station that could send gas to each delivery point, including the MarkWest delivery point.[95] That was Producer's claim in the arbitration, which was brought under the Gathering Agreement's arbitration provision.[96]  The award expressly found the Gathering Agreement and its Second Amendment clearly and unambiguously required Gatherer to construct these high-pressure discharge pipelines.[97] Gatherer's tolling argument amounts to a collateral attack because a finding that the construction obligation was imposed by the secret Side Deal, and not the amended Gathering Agreement,[98] revisits and "directly contradict[s]" the award's determination that that same obligation "was clear and unambiguous" in the amended Gathering Agreement.[99]

---

[94] *In re Vale*, 2015 WL 721038, at *4.

[95] *See* Interim Award at 3 ("[Producer] brought this arbitration for breach of contract against [Gatherer] for breach of the . . . Gathering Agreement."); *id.* at 5 ("[Producer]

> **b. Gatherer's Tolling Argument Impermissibly Alleges The Arbitration Panel Erred.**

In an effort to avoid the award's consequences, Gatherer argues the award was wrong.[100] This, too, is a collateral attack. "Claims alleging errors . . . in an arbitration are specifically dealt with by the applicable arbitration statutes."[101]

First, Gatherer argues the award never cites to a "specific provision of the Gathering Agreement that 'clear[ly] and unambiguous[ly]' states [Gatherer] is obligated to fund the ***construction*** of high-pressure discharge pipelines at [Producer's] unilateral request" because "no such provision exists."[102] Gatherer argues the "pipeline construction obligations [are] not included in the Gathering

---

repeatedly asked [Gatherer] to satisfy its obligations under the Gathering Agreement by building a pipeline connection from Freedom Station to send gas to each Delivery Point, most importantly the Delivery Point at the Bluestone Plant, MarkWest, a direct competitor of [Buyer].").

[96] *See, e.g., id.* at 3, 12; Am. Compl. ¶ 52.

[97] Interim Award at 10, 16–19.

[98] PAB 48–49; POL 17.

[99] *Williams*, 1993 WL 331049, at *2–3; Interim Award at 16–19.

[100] PRL 10–11, 14–15 (arguing the award either incorrectly identified the construction obligation as clear and unambiguous, or inappropriately considered extrinsic evidence).

[101] *Phillips Petroleum Co. v. Arco Alaska, Inc.*, 1988 WL 60380, at *6 (Del. Ch. June 14, 1988) (citing 9 U.S.C. § 10 and explaining "[i]f such claims are found to have merit, the appropriate remedy is an order vacating that award, not an independent damage action that, as a practical matter, would defeat rights acquired under that award").

[102] PAB 19.

Agreement's plain text,"[103] and this "expansion obligation [cannot] be implied."[104]

Then, Gatherer declares "the arbitration panel was forbidden from inserting [an obligation to construct high-pressure discharge pipelines] post-hoc into the agreement."[105]  Finally, Gatherer reasons the panel erred by considering extrinsic evidence when it concluded the Gathering Agreement was clear and unambiguous.[106]

These arguments, that the panel's findings were ultra vires, incorrect, or legally erroneous, are improper collateral attacks.  None of these arguments can be heard by this Court because they would "render[] the 'final and binding' language

---

[103] PRL 3 ("Defendants attempt to imply pipeline construction obligations not included in the Gathering Agreement's plain text.  But the Gathering Agreement and Second Amendment cannot put [Gatherer] on notice of obligations that are not actually written in the agreement.").

[104] POL 5.

[105] *Id.* (emphasis added); *but see id.* at 19 ("Defendants' . . . argument is premised on their incorrect assertion that the construction obligation appears on the face of the Gathering Agreement or the Second Amendment.  But the plain language of the Gathering Agreement and Second Amendment do not require [Gatherer] to construct high-pressure discharge pipelines . . . .").

[106] PRL 11; *id.* at 14–15 (citing *Piranha P'rs v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020)).

of an arbitration clause meaningless"[107] and directly conflict with "the exclusive FAA review process."[108]

### 4.    The Arbitration Award Cannot Be Set Aside.

Unable to reconcile its tolling argument with the arbitration award, or avoid the FAA's exclusive vacatur procedures, Gatherer finally argues in its last responsive filing that "the arbitration award should not be considered at the motion to dismiss stage."[109]  In other words, Gatherer wants me to set it aside.[110]  Gatherer propounds four reasons why I should not consider the arbitration award at the motion to dismiss stage:

---

[107] *Gulf LNG Energy*, 242 A.3d at 587 (internal quotation marks omitted).

[108] *Id.* at 591; *see* 9 U.S.C. § 10(a)(4) ("[T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.")

[109] PRL 11.

[110] *See*, *e.g.*, *In re Vale*, 2015 WL 721038, at *4 ("A collateral attack is an attempt to 'avoid, defeat, evade, or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial.'" (quoting *Fransen v. Conoco, Inc.*, 64 F.3d 1481, 1487 (10th Cir. 1995))).

> [(1)]  The arbitration award does not address statutes of limitations or contain a finding of when [Gatherer] was on notice of its obligation to build high-pressure discharge pipelines for [Producer]; [(2)]  Even if the arbitration award did contain such a finding, the award has not been confirmed in a final judgment; [(3)]  The parties agreed the arbitration award was inadmissible or not discoverable in subsequent disputes; and [(4)] The arbitrators considered twenty-six days of testimony (which would be inadmissible and unnecessary if the Gathering Agreement were unambiguous) and the arbitration award itself relies on extrinsic evidence.[111]

None succeed.  Having already explained why the fourth reason constitutes a collateral attack, I address the remaining three.

### a.  Notice

Gatherer argues the arbitration award does not contain a finding of when Gatherer was on notice of its Gathering Agreement obligations.  This is of no moment.  The arbitration award determined the construction obligation under the Gathering Agreement as amended was clear, unambiguous, and written in plain language.[112]  As explained, obligations arising from the plain language of a signed contract are not unknowable; a party is on notice of the content of an agreement's

---

[111] PRL 10–11.

[112] *See*, *e.g.*, Interim Award at 18 ("[Gatherer's] current claim that it has no obligation to deliver gas from Freedom Station to each of the Delivery Points contradicts the plain language of the Gathering Agreement.").

clear terms when she signs it.[113]  The arbitration award did not need to additionally state that Gatherer was on notice for that law to operate.

### b.    Finality

Gatherer argues the award has not been confirmed in a final judgment and so "should not be considered at the [m]otion to [d]ismiss [s]tage."[114]  The order, adjudgment, and decree confirming the final award appears to be a final judgment.[115]  The Texas court declared, "The Court further ORDERS that the Motion to Confirm is GRANTED.  It is therefore ORDERED, ADJUDGED, AND DECREED that the [f]inal [a]ward dated November 21, 2022 . . . is hereby CONFIRMED."[116]  And Gatherer asserts it appealed the confirmation of the award

---

[113] *Newell Rubbermaid*, 2014 WL 1266827, at \*6–7; *see* Restatement (Second) of Contracts § 157 cmt. b (1981); *Payne*, 2024 WL 726907, at \*6; *see also Bathla*, 200 A.3d at 757, 763.

[114] PRL 11.

[115] D.I. 65, Ex. A at 2.

[116] *Id*.  After the paragraph ordering, adjudging and decreeing the final award, the court explained "th[e] order does not address or dispose of [Gatherer's] claim for declaratory judgment pursuant to Section 16.7 of the Gathering Agreement, its claim for other provisions of judicial relief as permitted under Section 16.7 of the Gathering Agreement, or its request to enjoin [Producer's] second-filed Pennsylvania [s]uit." *Id*.  For purposes of those unsettled matters not relevant here, the court concluded the exemption section by declaring "[t]his is not a final judgment." *Id*.

seven days after the Texas state court issued its order.[117] An appeal may be taken only from a final judgment.[118]

Regardless of whether the Texas order constitutes a final judgment, collateral attack only concerns what is contained in a final arbitration award. It "does not depend on the *res judicata* or collateral estoppel effect of claims raised or decided in the prior arbitration."[119] Whether the final award was confirmed in a final judgment does not inform whether Gatherer impermissibly collaterally attacks the final award.[120] The only relevant question for collateral attack is whether the award is a final award. It is.[121]

---

[117] PRL 12 n.4 ("The Arbitration Award is currently the subject of an accelerated appeal in Texas' Tenth Court of Appeals. *See ETC Northeast Field Services, LLC v. PennEnergy Resources, LLC*, No. 10-23-00022-CV (filed 1/18/2023).").

[118] *Handlin v. Stuckey*, 295 S.W.2d 463, 465 (Tex. App. 1956) ("It is well settled that unless otherwise specially provided by law, a judgment must be final in order to be appealable.") (quoting Tex. R. Civ. P. 301); *Rodriguez v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 5624151, at *1 (Tex. App. Aug. 30, 2023) (indicating the Texas Courts of Appeals have "no jurisdiction to hear an appeal from a judgment that is not final").

[119] *Gulf LNG Energy*, 242 A.3d at 578.

[120] *See* Final Award ¶ 20 (declaring the final award "completely resolves and decides all claims, counterclaims, and disputed issues, included requests for attorneys' fees and costs"); D.I. 65, Ex. A at 2 (ordering "that the [m]otion to [c]onfirm is granted . . . [and] [o]rder[ing], [a]djudg[ing], and [d]ecree[ing] that the [f]inal [a]ward . . . is . . . CONFIRMED").

[121] *Astrum Fund I GP, LP v. Maracci*, 2022 WL 252343, at *6–7 (Del. Ch. Jan. 27, 2022) (explaining an award is considered final when the disputed "claim is completely determined[,] . . . [and] [i]f an arbitrator's decision is clear enough to indicate unequivocally what each party is required to do") (internal quotation marks omitted); *see*

### c. Admissibility

Gatherer tries one more angle to avoid the arbitration award. Gatherer points to the Gathering Agreement's arbitration procedure and asserts it "makes clear that 'the arbitration process shall be kept confidential' and that the arbitrators' '***opinions shall not be discoverable or admissible in any legal proceeding for any purpose***.'"[122] Gatherer's partial quotation is misleading in what it omits.[123] The provision states the award shall not be "discoverable or admissible . . . for any purpose, except to the extent reasonably necessary to enforce the final decision of the arbitrators."[124] As discussed, a collateral attack seeks to avoid the force and effect of a final award.[125] Defendants pointed to the arbitration award to enforce its effect.[126] It is admissible.

---

Final Award ¶ 1 (incorporating the Interim Award "as if set forth at length"); *id.* ¶ 20 ("This Final Award, together with the Interim Award, fully and completely resolves and decides all claims, counterclaims, and disputed issues . . . .").

[122] PRL 12 (quoting Gathering Agreement at Ex. E).

[123] Counsel are reminded of the importance of providing full, accurate, and undistorted quotations and citations in briefing. Del. Lawyers' R. Pro'l Conduct 3.3.

[124] Gathering Agreement at Ex. E.

[125] *In re Vale*, 2015 WL 721038, at *4.

[126] *See, e.g.*, Fiduciary DOB 30–31 (arguing Gatherer's claim is a collateral attack on the arbitration final award and referring the Court to Producer's DOB "for its arguments regarding [Gatherer's] collateral attack"); Producer DOB 22 ("[Gatherer's] [a]mended [c]omplaint is an impermissible collateral attack on the [a]rbitration [a]ward."). And as explained, the arbitration award was integral to Gatherer's own pleadings in this action. *See supra* note 8; *see also H–M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 139 (Del.

Unable to escape the arbitration award, Gatherer has failed to show circumstances that warrant tolling the presumptively valid limitations period. Its claims are untimely.

## III.   CONCLUSION

Defendants' motions to dismiss are GRANTED.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*

---

Ch. 2003) ("Under Rule 12(b)(6), a complaint may, despite allegations to the contrary, be dismissed where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations.").